**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WGL ENERGY SYSTEMS, INC.<br>6862 Elm Street, Suite 300<br>McLean, Virginia 22101,<br><br>         Plaintiff,<br><br>         v.<br><br>DAE SUNG LLC<br>13246 Route 59 Suite 208<br>Plainfield, Illinois 60558,<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 17-cv-2689 |

## PARTIES

1. WGL Energy Systems, Inc. ("WGL Energy") is a Delaware corporation with its principal place of business located at 8614 Westwood Center Drive, Vienna, Virginia 22182.

2. WGL Energy is the successor in interest to Washington Gas Energy Systems, Inc.

3. Dae Sung LLC ("Dae Sung") is an Illinois limited liability company with its principal place of business located at 13246 Route 59 Suite 208, Plainfield, Illinois 60558. Dae Sung also has an office at 5276 Willow Pond Road, Clover, South Carolina 29710.

4. Dae Sung is a certified Small Business pursuant to Section 8(a) of the Small Business Act (15 U.S.C. § 637(a)).

5. Upon information and belief, Dae Sung LLC is the successor in interest to Dae Sung Corporation, which was an Illinois corporation with offices located at 22121 Princeton Circle, Frankfort, Illinois. Upon information and belief, Dae Sung Corporation was merged or consolidated into Dae Sung LLC on or about April 8, 2011, and Dae Sung LLC assumed all the

1

rights and obligations of Dae Sung Corporation.  Dae Sung LLC and Dae Sung Corporation are referred to collectively as "Dae Sung."

6. As described in further detail below, WGL Energy and Dae Sung (collectively, the "Parties") entered into a subcontract agreement concerning work to be performed by WGL Energy, and paid for by Dae Sung, on three separate construction projects located in the District of Columbia.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendant are residents of different states and the amount in controversy exceeds $75,000.

8. This Court has personal jurisdiction over Dae Sung because the claim arises from Dae Sung transacting business with WGL Energy in the District of Columbia and Dae Sung conducts substantial business in the District of Columbia.

9. Venue lies in this district under 28 U.S.C. § 1391(b).  Each of the claims centers on work that was contracted to be performed in Washington, D.C.

## FACTUAL ALLEGATIONS

10. Certain contracts were awarded to Dae Sung by the U.S. General Services Administration ("GSA") as a result of the 2010 National Capital Region American Reinvestment and Recovery Act ("ARRA") funded projects.  WGL Energy agreed to serve as a subcontractor for Dae Sung to provide design/build services in accordance with those contracts.  On or about December 2, 2010, WGL Energy (which was, at that time, known as Washington Gas Energy Systems, Inc.) entered into a "Subcontract Agreement to Provide Design/Build Services in Accordance with the ARRA-Funded Prime Contracts Between Dae Sung Corporation and the GSA" ("Subcontract") with Dae Sung.

2

11. Section X.G of the Subcontract states as follows: "Good Faith. The parties are charged with the duties of acting in good faith, or being fully cooperative with one another, and using their best efforts to reach agreement on any matters to be resolved during the term of the Agreement, to meet the specific terms of the Agreement, and to perform all acts necessary or incidental thereto."

12. Section III of the Subcontract states Dae Sung and WGL Energy agreed that "[p]rofits resulting from accepted change requests resulting in modifications to any Prime Contract shall be split 50/50 among the Parties or as otherwise agreed to by the Parties. Change requests resulting in modifications to any Prime Contract are separate and distinct from the award of pre-priced options discussed in Section III.A of this Subcontract."

13. WGL Energy agreed to provide services as requested by Dae Sung by subsequently issued "work orders." (Subcontract § II(B)).

14. The three projects at issue in this matter all arise under the Subcontract and work orders issued thereunder. As outlined below, the projects are referred to as 1) the Tax Court Project, 2) the Markey Project, and 3) the EPA Project.

### Tax Court Project

15. On or about November 29, 2010, Dae Sung issued a work order to WGL Energy that outlined the scope of work for a project at the United States Tax Court (the "Tax Court" Project), located at 400 Second Street NW, Washington, D.C. 20217.

16. Dae Sung issued WGL Energy a notice to proceed on or about January 20, 2011.

17. The statement of work consisted generally of design and construction of the mechanical (i.e., heating, ventilating, and air conditioning), electrical, and plumbing work on the project.

18. The as-awarded value of the Tax Court Project was in excess of $2,000,000.

19. Over the course of the project, Dae Sung caused changes to the scope of work, delay, and disruption that adversely impacted WGL Energy.

20. Immediately after receiving the notice to proceed, WGL Energy encountered major engineering changes imposed by GSA and/or Dae Sung on work relating to chillers and cooling towers, which delayed the start and progress of the work.

21. These engineering changes related primarily to a decision to increase the cooling capacity of two chillers that were to replace two existing chillers.

22. WGL Energy was forced to rent two temporary chillers for use during the summer of 2011 due to this change.

23. WGL Energy also encountered asbestos in the course of performing its contract, which GSA and Dae Sung determined had to be abated before work could progress.

24. WGL Energy experienced periods of constructive suspension attributable to Dae Sung over the course of this project, including but not limited to those due to asbestos abatement.

25. WGL Energy submitted change orders to Dae Sung seeking compensation for changes in the scope of work. Dae Sung has refused to pay WGL Energy for many of these changes.

26. GSA and Dae Sung agreed to a modification to the prime contract: Modification 21.

27. Modification 21, which was for $1,000,000, purported to compensate Dae Sung for changes in work imposed by GSA, including the chillers and temporary cooling work and the associated delay, disruption and suspension costs. It also compensated Dae Sung for the costs associated with the asbestos abatement work.

28. A large portion of the work enumerated in Modification 21 pertains to work Dae Sung explicitly recognized as changes for work completed by WGL Energy.

29. Despite being compensated for those same damages via Modification 21, Dae Sung has refused to pay WGL Energy for work WGL Energy performed, including work for which Dae Sung incurred no costs.

30. Dae Sung thereafter perpetrated various acts and omissions that substantially harmed WGL Energy on the Tax Court Project, including but not limited to:

   a. Imposing unreasonable delays on WGL Energy and failing to take steps to mitigate avoidable damages from those delays;

   b. Failing to recover from GSA, through a contract modification or otherwise, compensation for WGL Energy's disruption, delay, and changed work costs;

   c. Refusing to compensate WGL Energy for its delay, disruption, and changed work damages despite being compensated by GSA for those same damages via Modification 21;

   d. Unreasonably administering and managing the Subcontract, which prevented WGL Energy from fully demobilizing and redirecting key personnel to other projects;

   e. Refusing to compensate WGL Energy for profits from Modification 21 in accordance with Section III of the Subcontract;

   f. Making changes to the project scope of work without timely issuing Subcontract modifications to reflect the changes in scope, schedule, and value; and,

   g. Failing to pay WGL Energy for work that had been completed and invoiced.

31. As a result of Dae Sung's actions and inactions, WGL Energy incurred sudden delays of an unpredictable duration, which made it impractical for WGL Energy to cut back on home office personnel or facilities or undertake performance of other work.

32. Dae Sung has refused to compensate WGL Energy for the acts and omissions outlined above.

33. Federal Acquisition Regulation ("FAR") 52.232-5 requires that a prime contractor certify that "[a]ll payments due to subcontractors and suppliers from previous payments received under the contract have been made, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements" and that the contractor's "request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract."

34. FAR 52.232-5 applies to the prime contract between GSA and Dae Sung.

35. Upon information and belief, Dae Sung has certified to GSA that Dae Sung has paid WGL Energy.  However, in reality, Dae Sung has refused to do so.

### Markey Project

36. On or about November 29, 2010, Dae Sung issued a work order to WGL Energy which outlined the scope of work for a project at the Howard T. Markey Courthouse (the "Markey" Project), located at 717 Madison Place NW, Washington, D.C. 20005.

37. The statement of work consisted generally of lighting-related work throughout the Markey Courthouse, including replacing light fixtures, replacing lamps, and installing motion sensors that would automatically turn lights on and off.

38. The as-awarded value of the Markey Project was approximately in excess of $1,000,000.

39. Dae Sung issued a verbal notice to proceed on the work on this project in the first quarter of 2011.

40. WGL Energy began work on the project through its subcontractor, LRI Energy Solutions, LLC, in March 2011.

41. Over the course of the project, Dae Sung caused changes to the scope of work, delay, disruption, and management failures that adversely impacted WGL Energy.

42. Dae Sung thereafter perpetrated various acts and omissions that substantially harmed WGL Energy on this project, including but not limited to:

    a. Unreasonably imposing delays on WGL Energy and failing to take steps to mitigate avoidable damages from those delays;

    b. Failing to recover from GSA, through a contract modification or otherwise, compensation for WGL Energy's disruption, delay, and changed work costs;

    c. Failing to address the specific costs and schedule impacts of delays caused by GSA's failure to provide direction regarding engineering and scope issues discovered in the original solicitation;

    d. Unreasonably administering and managing the Subcontract, which prevented WGL Energy from fully demobilizing and redirecting key personnel to other projects;

    e. Failing to inform the GSA that engineering and scope issues were causing extreme cost and schedule problems to the project;

    f.   Failing to consult with WGL Energy regarding the cost and schedule impacts arising from GSA's failure to resolve design problems arising from the original solicitation;

    g.   Failing to issue necessary subcontract modifications to address issues relating to scope, schedule, and costs of the project; and,

    h.   Failing to prepare and issue a cost loaded project schedule as required by the prime contract.

43.    Engineering errors for which Dae Sung is also responsible include, but are not limited to: errors related to lighting fixtures, lack of recognition of the presence of asbestos containing materials throughout the courthouse, and a failure to consider the construction details of the existing ceilings.

44.    As a result of Dae Sung's actions and inactions, WGL Energy incurred sudden delays of an unpredictable duration which made it impractical for WGL Energy to cut back on home office personnel or facilities or undertake performance of other work.

45.    Dae Sung has refused to compensate WGL Energy for the acts and omissions outlined above.

46.    FAR 52.232-5 requires that a prime contractor certify that "[a]ll payments due to subcontractors and suppliers from previous payments received under the contract have been made, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements" and that the contractor's "request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract."

47. FAR 52.232-5 applies to the prime contract between GSA and Dae Sung.

48. Upon information and belief, Dae Sung has certified to GSA that Dae Sung has paid WGL Energy. However, in reality, Dae Sung has refused to do so.

### Environmental Protection Agency ("EPA") Project

49. In May 2010, the GSA issued solicitation No. GS-11P-10-YA-C-0089 ("the Solicitation"), inviting bids for certain design-build construction work at the United States Environmental Protection Agency Building (the "EPA" Project), located at 12th Street and Constitution Avenue NW, Washington, D.C. 20004.

50. The EPA project required the installation and completion of a number of energy conservation measures ("ECMs") within the existing building. The EPA Project's base scope of work consisted of the upgrade of the existing Building Management Control System, which had been manufactured by Siemens.

51. This work scope included the installation of a front-end computer station, the latest version of software for building automation, and recommissioning of the building automation system to confirm proper control and operation of the building's mechanical equipment. This line item was known as "ECM No. 5."

52. The Solicitation also included multiple options for additional ECMs, which, if exercised by GSA, would increase the cost and scope of work required to complete the project.

53. The as-awarded value of the EPA Project was approximately $3,000,000.

54. On or about June 23, 2010, Dae Sung and WGL Energy entered into a Teaming Agreement, pursuant to which Dae Sung agreed that WGL Energy would serve as a subcontractor if Dae Sung were to receive a prime contract resulting from its proposal to the Solicitation.

55. Dae Sung was awarded the prime contract at issue on or about July 9, 2010.

56. On or about December 2, 2010, Dae Sung and WGL Energy executed the Subcontract, which included that WGL Energy agreed to be a subcontractor for the EPA Project.

57. Dae Sung thereafter perpetrated various acts and omissions that substantially harmed WGL Energy on this project, including but not limited to:

   a. Unreasonably imposing unreasonable delays on WGL Energy and failing to take steps to mitigate avoidable damages from those delays;

   b. Failing to recover from GSA, through a contract modification or otherwise, compensation for WGL Energy's disruption, delay, and changed work costs;

   c. Failing to address the specific costs and schedule impacts of delays caused by GSA's failure to provide direction regarding engineering and scope issues discovered in the original solicitation;

   d. Unreasonably administering and managing the Subcontract, which prevented WGL Energy from fully demobilizing and redirecting key personnel to other projects;

   e. Refusing to issue a full notice to proceed for construction, particularly for ECM No. 5;

   f. Refusing to assist with the procurement of existing facility drawings, causing delay to WGL Energy;

   g. Requiring changes to the design without properly exercising the ECM options that provided for such changes;

    h.  Making changes to the project scope of work without timely issuing Subcontract modifications to reflect the changes in scope, schedule, and value;

    i.  Failing to pay WGL Energy for work that had been completed and invoiced; and,

    j.  Failing to produce and update a cost-loaded project schedule.

58.    As a result of Dae Sung's actions and inactions, WGL Energy incurred sudden delays of an unpredictable duration which made it impractical for WGL Energy to cut back on home office personnel or facilities or undertake performance of other work.

59.    Dae Sung has refused to compensate WGL Energy for the acts and omissions outlined above.

60.    FAR 52.232-5 requires that a prime contractor certify that "[a]ll payments due to subcontractors and suppliers from previous payments received under the contract have been made, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements" and that the contractor's "request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract."

61.    FAR 52.232-5 applies to the prime contract between GSA and Dae Sung.

62.    Upon information and belief, Dae Sung has certified to GSA that Dae Sung has paid WGL Energy.  However, in reality, Dae Sung has refused to do so.

**<u>COUNT I</u>**
**BREACH OF CONTRACT**
**(Tax Court Project)**

63.    WGL Energy incorporates the allegations of paragraphs 1 through 62 by reference.

11

64. Pursuant to the Parties' Subcontract and the November 29, 2010 Tax Court work order issued by Dae Sung, WGL Energy agreed to perform certain services at the Tax Court building.

65. WGL Energy has performed its contractual obligations at the Tax Court.

66. Dae Sung had a duty not to cause unreasonable delays to WGL Energy's work.

67. Dae Sung had a duty to perform the contract in good faith.

68. Dae Sung had a duty to compensate WGL Energy for work performed and delay and disruption incurred.

69. Dae Sung breached its contractual obligations in various ways, including but not limited to:

   a. Imposing unreasonable delays on WGL Energy and failing to take steps to mitigate avoidable damages from those delays;

   b. Failing to recover from GSA, through a contract modification or otherwise, compensation for WGL Energy's disruption, delay, and changed work costs;

   c. Refusing to compensate WGL Energy for its delay, disruption, and changed work damages despite being compensated by GSA for those same damages via Modification 21;

   d. Unreasonably administering and managing the Subcontract, which prevented WGL Energy from fully demobilizing and redirecting key personnel to other projects;

   e. Refusing to compensate WGL Energy for profits from Modification 21 in accordance with Section III of the Subcontract;

    f.   Making changes to the project scope of work without timely issuing Subcontract modifications to reflect the changes in scope, schedule, and value; and,

    g.   Failing to pay WGL Energy for work that had been completed and invoiced.

70.    As a direct and proximate result of Dae Sung's breach of contract for Tax Court, WGL Energy suffered damages in an amount to be proven at trial, but in excess of $75,000.

**COUNT II**
**BREACH OF CONTRACT**
**(Markey Project)**

71.    WGL Energy incorporates the allegations of paragraphs 1 through 62 by reference.

72.    Pursuant to the Parties' Subcontract and the November 29, 2010 Markey work order issued by Dae Sung, WGL Energy agreed to perform certain services at the Markey Courthouse.

73.    WGL Energy has performed its contractual obligations at Markey Courthouse.

74.    Dae Sung had a duty not to cause unreasonable delays to WGL Energy's work.

75.    Dae Sung had a duty to perform the contract in good faith.

76.    Dae Sung had a duty to compensate WGL Energy for work performed and delay and disruption incurred.

77.    Dae Sung breached its contractual obligations in various ways, including but not limited to:

    a.   Engineering errors;

    b.   Unreasonably imposing unreasonable delays on WGL Energy and failing to take steps to mitigate avoidable damages from those delays;

    c. Failing to recover from GSA, through a contract modification or otherwise, compensation for WGL Energy's disruption, delay, and changed work costs;

    d. Failing to address the specific costs and schedule impacts of delays caused by GSA's failure to provide direction regarding engineering and scope issues discovered in the original solicitation;

    e. Unreasonably administering and managing the Subcontract, which prevented WGL Energy from fully demobilizing and redirecting key personnel to other projects;

    f. Failing to inform the GSA that engineering and scope issues were causing extreme cost and schedule problems to the project;

    g. Failing to consult with WGL Energy regarding the cost and schedule impacts arising from GSA's failure to resolve design problems arising from the original solicitation;

    h. Failing to issue necessary subcontract modifications to address issues relating to scope, schedule, and costs of the project; and,

    i. Failing to prepare and issue a cost loaded project schedule as required by the prime contract.

78. As a direct and proximate result of Dae Sung's breach of contract for Markey Courthouse, WGL Energy suffered damages in an amount to be proven at trial, but in excess of $75,000.

## COUNT III
## BREACH OF CONTRACT
### (Environmental Protection Agency "EPA" Project)

79. WGL Energy incorporates the allegations of paragraphs 1 through 62 by reference.

80. Pursuant to the Parties' Subcontract, WGL Energy agreed to perform certain services at the EPA building.

81. WGL Energy has performed its contractual obligations for the EPA Project.

82. Dae Sung had a duty not to cause unreasonable delays to WGL Energy's work.

83. Dae Sung had a duty to perform the contract in good faith.

84. Dae Sung had a duty to compensate WGL Energy for work performed and delay and disruption incurred.

85. Dae Sung breached its contractual obligations in various ways, including but not limited to:

   a. Unreasonably imposing unreasonable delays on WGL Energy and failing to take steps to mitigate avoidable damages from those delays;

   b. Failing to recover from GSA, through a contract modification or otherwise, compensation for WGL Energy's disruption, delay, and changed work costs;

   c. Failing to address the specific costs and schedule impacts of delays caused by GSA's failure to provide direction regarding engineering and scope issues discovered in the original solicitation;

   d. Unreasonably administering and managing the Subcontract, which prevented WGL Energy from fully demobilizing and redirecting key personnel to other projects;

    e. Refusing to issue a full notice to proceed for construction, particularly for ECM No. 5;

    f. Refusing to assist with the procurement of existing facility drawings, causing delay to WGL Energy;

    g. Requiring changes to the design without properly exercising the ECM options that provided for such changes;

    h. Making changes to the project scope of work without timely issuing Subcontract modifications to reflect the changes in scope, schedule, and value;

    i. Failing to pay WGL Energy for work that had been completed and invoiced; and,

    j. Failing to produce and update a cost-loaded project schedule.

86. As a direct and proximate result of Dae Sung's breach of contract for the EPA Project, WGL Energy suffered damages in an amount to be proven at trial, but in excess of $75,000.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Tax Court Project)**

87. WGL Energy incorporates the allegations of paragraphs 1 through 62 by reference.

88. WGL Energy performed substantial services for the benefit of Dae Sung in connection with the Tax Court Project.

89. Dae Sung has realized and retained the value of the work performed, but has not paid WGL Energy a just amount for these benefits, as measured by the value of the benefits conferred and the cost WGL Energy incurred in providing these benefits.

90.     Dae Sung's retention of the benefits WGL Energy conferred without compensating WGL Energy is unjust.

## COUNT V
## UNJUST ENRICHMENT
### (Markey Project)

91.     WGL Energy incorporates the allegations of paragraphs 1 through 62 by reference.

92.     WGL Energy performed substantial services for the benefit of Dae Sung in connection with the Markey Project.

93.     Dae Sung has realized and retained the value of the work performed, but has not paid WGL Energy a just amount for these benefits, as measured by the value of the benefits conferred and the cost WGL Energy incurred in providing these benefits.

94.     Dae Sung's retention of the benefits WGL Energy conferred without compensating WGL Energy is unjust.

## COUNT VI
## UNJUST ENRICHMENT
### (Environmental Protection Agency "EPA" Project)

95.     WGL Energy incorporates the allegations of paragraphs 1 through 62 by reference.

96.     WGL Energy performed substantial services for the benefit of Dae Sung in connection with the EPA Project.

97.     Dae Sung has realized and retained the value of the work performed, but has not paid WGL Energy a just amount for these benefits, as measured by the value of the benefits conferred and the cost WGL Energy incurred in providing these benefits.

98.     Dae Sung's retention of the benefits WGL Energy conferred without compensating WGL Energy is unjust.

**JURY DEMAND**

99. WGL Energy requests a trial by jury on all counts so triable.

**REQUEST FOR RELIEF**

WHEREFORE, WGL Energy requests an award as follows:

1. Various categories of damages in amounts to be determined at trial;

2. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

3. The costs of this action;

4. Reasonable attorneys' fees;

5. Such other relief the Court deems just and proper.


Dated: December 15, 2017

Respectfully submitted,

/s/ J. Andrew Jackson
J. Andrew Jackson (DC Bar No. 435541)
Email:  ajackson@jonesday.com
Esha Mankodi (DC Bar No. 1015211)
Email:  emankodi@jonesday.com
Jones Day
51 Louisiana Ave, N.W.
Washington, D.C. 20001
Telephone:    (202) 879-3939
Facsimile:    (202) 626-1700

*Attorneys for Plaintiff*